## Ross-Vaughan Tobacco Company v. Lucas.

(Decided June 23, 1922.)

### Appeal from Grayson Circuit Court

Damages—Action for Purchase Price of Tobacco—Verdict.—A tobacco company entered into a written contract with Lucas, a farmer having forty acres of tobacco in cultivation for the purchase of the same when matured, at $40.00 per hundred pounds for all produced. Before the tobacco crop was ready for the market in 1918 the price declined and the purchasers, to avoid the contract, offered to take the tobacco at a less price, and finally obtained an agreement from Lucas to take part of the tobacco at $35.00 per hundred pounds, and after taking a small part of it refused to take any more: Held that the tobacco company was liable to Lucas under the contract for the purchase price of the tobacco, and a verdict for $4,000.00 in Lucas' favor will not be set aside.

W. P. SANDIDGE and J. C. CAMPBELL for appellant.

H. L. JAMES, JAMES T. BASHAM and G. K. HOLBERT for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Tobacco was very high in the market in the fall of 1918, and many producers sold their crops before it was cut at a very high price, considering the

prices that had theretofore prevailed. Appellee Lucas had forty acres of tobacco in cultivation and the Ross-Vaughan Tobacco Company were manufacturers who were purchasing crops of tobacco throughout the country near Leitchfield. On September 8th the parties to this action entered into a written contract whereby Lucas sold his tobacco to said company at $40.00 per 100 pounds. The contract reads as follows:

"I have this day sold to the Ross-Vaughan Tobacco Company, incorporated, my crop of tobacco consisting of forty acres Burley, now growing on my farm, and purchase, in Breckinridge county, Kentucky.

"$40.00 per hundred pounds for leaf.
"$40.00 per hundred pounds for lugs.
"$40.00 per hundred pounds for trash.

"I have received $3,500.00 on the purchase money, this amount to be a lien on the said crop of tobacco. I am to finish cultivating said tobacco and prepare it for the market in the usual way and am to deliver the same in good order and free from any material damage to the factory of the Ross-Vaughan Tobacco Company, incorporated, at Leitchfield, Grayson county, Kentucky, at which time I am to be paid the remainder of the purchase money, and the Ross-Vaughan Tobacco Company, incorporated, hereby agrees to receive said tobacco and to pay the above prices for same upon delivery. I have the right to contract and sell this entire crop of tobacco.

"This the 5th day of September 1918.

"Z. L. Lucas,
"Ed F. Wallace,
By J. H. Hardin."

This is admitted to be the contract of the company although signed by its agents and Lucas only. At the time of the making of the contract the tobacco was in the field and required further attention and cultivation. The company paid Lucas $3,500.00 in cash on the purchase, and this was to be a lien upon the tobacco. Before tobacco was ready for the market the price had materially declined, and, as we read this record, the company began to try to avoid taking the tobacco at the high price at which it had contracted to purchase it.

The appellee, plaintiff below, claims that he produced 58,037 pounds of burley tobacco on the forty acres which he cultivated; that it was a fine quality and well pre-

pared for the market, and that during the months of November and December, 1918, he delivered at the warehouse of appellant company, in Leitchfield, pursuant to his contract, 21,297 pounds of tobacco that was in good order, prepared for the market in the usual way and which had not received any material damage. Of this amount there were four wagon loads amounting to 6,800 pounds which he carried to the warehouse of the company on December 4th, for delivery. At that time Lucas had in a barn in Leitchfield 20,200 pounds of tobacco raised on said forty acres and 9,740 pounds of prepared tobacco in his barn at home which was several miles from Leitchfield. He says he was ready, able and willing to deliver all of said tobacco in accordance with the terms of his contract to the appellant company; that appellant company declined to accept the four wagon loads brought to its warehouse, consisting of 6,800 pounds of tobacco, so tendered by the appellee, and the company demanded that said tobacco be reduced in price, claiming it was not well prepared for the market. Thereupon a subsequent oral agreement was entered into whereby Lucas was to deliver and the company was to receive all the balance of said crop of tobacco at thirty-five (35c) per pound, said delivery to begin on the following morning. A part of this is denied by appellant company. On the following morning the tobacco on the wagons was unloaded at thirty-five (35c) cents per pound, and Lucas, the farmer, began to haul other tobacco from his warehouse in Leitchfield, to the warehouse of the appellant company, and to offer to deliver it at thirty-five (35c) cents per pound, whereupon the company after receiving the 6,800 pounds on the wagons refused to accept any more of the Lucas tobacco, claiming that the agreement was they were to receive only the 6,800 pounds on the wagons and would not be bound thereafter to take or receive any portion of the remainder of the tobacco, but might do so if it was satisfactory to their purchasing agent, who examined the said tobacco and rejected the whole balance. In other words, the appellee Lucas insists that the company wrongfully repudiated its verbal contract to take all the tobacco at thirty-five (35c) cents per pound, while the appellant company insists that it did not agree to take any more of the tobacco except that which was on the wagons, amounting to 6,800 pounds, and had the privilege of taking more of the crop if after examination it desired to do

so. This is the real question in the case. Both parties admit the making of the verbal contract but they disagree as to its terms.

Tobacco was very much lower in the market at this time than it was when the written contract was made, and this of course made Lucas anxious to enforce his contract, while appellant company was equally as anxious to avoid carrying it out because tobacco of like quality could be had at a much less price. At any rate appellee Lucas contends that he had to sell his stored tobacco in the warehouse in Leitchfield, amounting to 20,200 pounds, and that in his barn at home, amounting to more than 9,000 pounds, at a very much less price than that which was mentioned in the written contract, or in the subsequent verbal contract, and suffered the loss of $9,000.00 for which he sues.

The evidence is long and conflicting. Lucas in substance says that after the company had violated its contract and refused to take his tobacco at forty cents per pound, he did enter into a verbal contract with the agents of the company whereby he was to receive thirty-five (35c) cents per pound for all the tobacco which he them had on his wagons in Leitchfield and all in the Van-Nort barn, amounting to over 20,000 pounds, but when they unloaded the wagons next morning the agents of the company positively refused to accept other tobacco then on wagons ready to be unloaded and which came from his barn. He could not get them to agree to take it. The agents of the company informed Lucas that they would not accept any more of his tobacco. He then sought out other tobacco purchasers in Leitchfield and tried to sell his tobacco to them but could not. He then hired a man to prize his tobacco and to put it in hogsheads and he shipped it to a Louisville tobacco warehouse where he sold it for a little less than thirteen cents (13c) per pound, the greatest price obtainable. He testified and proved by competent witnesses that the tobacco was of high quality, well prepared and delivered without damage.

On the contrary, the agents of the company assert that the tobacco was very poorly prepared and was not ready for the market and was not worth the price they had agreed upon nor in the condition in which the contract required it to be on delivery. These facts were submitted to the jury by proper instructions, and the jury returned a verdict in favor of appellee Lucas in the

sum of $4,000.00. Of course, this was not as large a sum as appellee Lucas claimed, but there is no doubt that the company violated its contract and deliberately attempted to force appellee Lucas to sell his tobacco to them at a much less price than that at which he had contracted to sell it to them on September 5th. In other words, tobacco had gone down since the making of the contract and the company was trying to force him to come down in violation of their written undertaking. The jury perhaps gave the company credit for whatever it could and found for appellee Lucas the balance.

It is insisted by appellants that their motion for peremptory instruction should have been sustained by the trial court, but in the light of the evidence we can find no foundation for such contention.

Although the court permitted the plaintiff to file an amended petition, seeking to recover damages for a breach of the contract, on December 5, 1918, it did not violate the broad discretion reposed in trial judges with respect to the filing of amended or supplemental pleadings.

No error appearing to the substantial rights of appellant the judgment is affirmed.

Judgment affirmed.